# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DEERE INSURANCE, COMPANY, | CASE NO. CV F 07-0010 LJO SMS |
| Plaintiff, | **SUMMARY ADJUDICATION DECISION** (Docs. 84, 93.) |
| vs. | |
| SANDERS OLDSMOBILE-CADILLAC, INC., et al., | |
| Defendants. | |

## INTRODUCTION

Plaintiff John Deere Insurance Company n/k/a Sentry Select Insurance Company ("Sentry") seeks summary adjudication that it owes no duty to defend or indemnify defendants[1] in underlying consumer litigation in the absence of potential liability for damages under Sentry's applicable policies. Sanders and Smith respond that determination of Select's duty to defend is premature in that the underlying litigation presents "potential for covered claims" subject to Select's duty to defend. Sanders and Smith seek to reinstate a stay of this coverage action pending further development of the underlying litigation. This Court considered Sentry's summary adjudication motion and Sanders and Smith's stay motion on

---

[1] Defendants are Sanders Oldsmobile Cadillac, Inc. ("Sanders Oldsmobile"), Claude Kenneth Sanders, Smith Chevrolet Company, Inc. ("Smith Chevrolet"), and Lawrence T. Smith. Sanders Oldsmobile and Claude Kenneth Sanders will be referred to collectively as "Sanders." Smith Chevrolet and Lawrence T. Smith will be referred to collectively as "Smith."

1

the record[2] and VACATES the June 3, 2009 hearing, pursuant to Local Rule 78-230(h). For the reasons discussed below, this Court GRANTS Sentry summary adjudication and DENIES reinstatement of stay of Sentry's claims at issue here.

## BACKGROUND

### The Parties

Sentry is a Wisconsin insurance company and issues policies in California. Sanders Oldsmobile was a Turlock car dealership, and Claude Kenneth Sanders was its owner and officer. Smith Chevrolet bought Sanders Oldsmobile, and Lawrence T. Smith is an owner and officer of Smith Chevrolet. Sentry issued policies to Sanders Oldsmobile with various coverages.

### The Underlying *Dominguez* Action

#### *Trial Court Proceedings*

In May 2002, Jaimi Dominguez, Odilia Dominguez, Eli Paz and Sandra L. Yanez (collectively the "*Dominguez* plaintiffs") filed a Stanislaus County Superior action ("*Dominguez* action") against Sanders to allege that Sanders' employees and agents misrepresented that the *Dominguez* plaintiffs were required to purchase an extended service agreement to secure third-party financing for vehicle purchases. The *Dominguez* plaintiffs pursued causes of action for fraud and deceit, violations of the California Consumer Legal Remedies Act (Cal. Civ. Code, §§ 1750, et seq.), violations of the California Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code, §§ 17200, et seq.), unjust enrichment, and declaratory relief.

After trial, the jury found liability under the Consumer Legal Remedies Act but awarded no damages. The trial court entered a May 3, 2005 judgment and found that Sanders had engaged in unfair and deceptive practices to violate the UCL by informing customers that an extended service agreement was required for third-party financing. The trial court further found that then newly enacted Proposition 64 operated prospectively and did not bar the action. Proposition 64 amended the UCL to add a standing

---

[2] This Court carefully reviewed and considered all arguments, points and authorities, declarations, testimony, statements of undisputed facts and responses thereto, objections and other papers filed by the parties. Omission of reference to an argument, document, objection or paper is not to be construed to the effect that this Court did not consider the argument, document, objection or paper. This Court thoroughly reviewed, considered and applied the evidence it deemed admissible, material and appropriate for summary adjudication.

2

requirement to allow representational claims by individuals who establish "injury in fact" and loss of money or property as a result of unfair competition.[3]

The trial court declined to award injunctive relief but awarded restitution to vehicle buyers who purchased extended service agreements during a four-year period.

### *Appeal*

Sanders appealed, and with its January 9, 2007 decision, the California Court of Appeal, Fifth Appellate District, reversed the trial court's judgment on the UCL cause of action and concluded that Proposition 64 applied to the *Dominguez* action. The Court of Appeal remanded to allow the *Dominguez* plaintiffs to seek to amend their complaint to add injured plaintiffs in that, as Sanders and Smith explain, the *Dominguez* plaintiffs were "without standing because they had no actual monetary loss."

The Court of Appeal explained that reversal of the judgment on the (third) UCL cause of action "raises questions as to the viability of the remainder of the judgment and the special verdict upon which it is partially based" and that '[i]f a judgment is ambiguous, we may examine the entire record, including the pleadings, to determine its scope and effect.'"

The Court of Appeal also explained disposition of the *Dominguez* plaintiffs' remaining claims:

> . . . The first cause of action alleged fraud and deceit, which require justifiable reliance on the false representation. . . . Since the jury expressly found no reasonable reliance in the instant case, the first cause of action must fall.
>
> As to the second cause of action, the trial court held in its statement of decision: "The jury returned a verdict in which they found liability under the Consumers Legal Remedies Act (Civil Code § 1750, et. seq.) but awarded no damages." The parties do not dispute this holding on appeal.

---

[3] In *Californians For Disability Rights v. Mervyns, LLC*, 39 Cal.4th 223, 227, 138 P.3d 2007 (2006), the California Supreme Court held:

> California law previously authorized any person acting for the general public to sue for relief from unfair competition. (Bus. & Prof.Code, former § 17204, as amended by Stats.1993, ch. 926, § 2, p. 5198 (former section 17204); *see also Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 561, 71 Cal.Rptr.2d 731, 950 P.2d 1086; *cf. Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 211, 197 Cal.Rptr. 783, 673 P.2d 660.) After Proposition 64, which the voters approved at the November 2, 2004, General Election, a private person has standing to sue only if he or she "has suffered injury in fact and has lost money or property as a result of such unfair competition." ( § 17204, as amended by Prop. 64, § 3; see also § 17203, as amended by Prop. 64, § 2.) This case requires us to decide whether the amended standing provisions apply to cases already pending when Proposition 64 took effect. We hold the new provisions do apply to pending cases.

As to the fourth cause of action, there is no cause of action for unjust enrichment under California law. The phrase "unjust enrichment" does not describe a theory of recovery, but an effect – the result of a failure to make restitution under circumstances where it is equitable to do so. Unjust enrichment is a general principle, underlying various legal doctrines and remedies, rather than a remedy itself; it is synonymous with restitution. . . . The trial court addressed the remedy of restitution in Section VIII of its judgment.

As to the fifth cause of action, the grant or denial of equitable relief, such as declaratory judgment or injunction, rests within the trial court's sound discretion and will not be disturbed on appeal absent a showing of clear abuse of discretion. . . . The parties do not claim that such an abuse took place in the trial court.

Although the judgment entered May 3, 2005, does not expressly address the non-UCL causes of action, no further adjudication is required as to the first, second, fourth, and fifth causes of action in light of the entirety of the record on appeal. Moreover, the remedies awarded by the trial court related only to the third cause of action for violations of the UCL.

Sentry characterizes the remand to address "solely" the UCL claim. Sanders and Smith point out that the Court of Appeal addressed remand to the trial court:

> In *Branick* [*v. Downey Savings & Loan Assn.,* 39 Cal.4th 235 (2006)], the Supreme Court noted the voters adopted Proposition 64 while the case was on appeal and the plaintiffs had no opportunity to file a motion in the superior court for leave to amend. (*Branick, supra*, 39 Cal.4th at p. 242.) We find ourselves in the same position in the instant action and subscribe to the Supreme Court's reasoning and resolution of the matter:
>
>> ". . . We thus do not know the facts that would necessarily inform the superior court's discretionary decision on such a motion [for leave to amend the complaint], such as the identity of any person plaintiffs might attempt to substitute and the nature of the claims any substituted plaintiff might assert. For this reason, and because the decision properly belongs to the superior court in the first instance [citation], the Court of Appeal correctly concluded the matter must be remanded to the superior court to determine whether, if plaintiffs do move to amend their complaint, the circumstances of this case warrant granting leave to amend. . . .
>>
>> ". . . This question . . . properly belongs in the first instance to the superior court. As a practical matter, we cannot in any event decide the question before plaintiffs have filed a motion for leave to amend. Given the question's potential factual and legal complexity, and without knowing the identity of the hypothetical new plaintiff or the nature of the claims he or she might assert, for this court to attempt to decide at this state of the proceedings whether any possible amendment would impermissibly change the nature of the action would be inappropriate." (*Branick, supra*, 39 Cal.4th at pp. 242-244, fn. omitted.)
>
> In view of this controlling authority, the proper remedy in the instant case is to remand the matter to allow respondents to move for leave to amend their complaint should they chose to do so, and allow the superior court, in the first instance, to

4

determine whether pursuant to *Branick* the circumstances of the case warrant the grant of leave to amend.

## *Post-Remand Proceedings*

After remand, the *Dominguez* plaintiffs sought in the trial court leave to file a second amended complaint to substitute Roxanne Cordova, Aaron Enriquez, Yolanda Munoz, Kathleen Espinoza, Ethan Rix and Helen Moore (collectively the "substituted *Dominguez* plaintiffs") as named plaintiffs. In their moving papers, the *Dominguez* plaintiffs noted that they "seek amendment solely for the purpose of complying with the new procedural requirements of Prop. 64 – to substitute new named plaintiffs in place of those that lost standing and to add formal class allegations in compliance with CCP § 382." The *Dominguez* plaintiffs noted the absence of "new causes of action or material allegations" against Sanders. Counsel for the *Dominguez* plaintiffs stated in his declaration that the Court of Appeal had reversed and remanded "for the sole purpose of allowing Plaintiffs the opportunity to file a motion to amend their complaint to add a new 'injured' plaintiff." On December 14, 2007, a second amended complaint was filed in the *Dominguez* action to identify the substituted *Dominguez* plaintiffs as parties.

On November 14, 2008, the substituted *Dominguez* plaintiffs sought to file a third amended complaint to add as defendants Smith Chevrolet and its bond company Universal Underwriters, Inc. The substituted *Dominguez* plaintiffs noted the absence of new allegations other than to add Smith Chevrolet and Universal Underwriters, Inc. The third amended complaint was filed on January 7, 2009 and contains a single UCL cause of action. More specifically, the third amended complaint alleges:

> Each plaintiff purchased a vehicle from SANDERS primarily for personal and family use, in which the purchase contract included a charge for an Extended Service Agreement ("ESA") which was included in the sale by SANDERS and purchased by Plaintiffs as a result of a false representation, failure to disclose, and unfair and deceptive business practices . . .
>
> At the time and place of each of the above sales, SANDERS' agents and employees made material misrepresentations as part of an unlawful business pattern and practice as to each Proposed Plaintiff by stating that they were required to purchase an ESA in order to secure financing from a third-party lender. SANDERS further concealed and failed to disclose that purchase of the ESA was optional, and that the lenders did not, in fact, require an ESA to secure financing.
>
> Business and Professions Code § 17200, et seq., the Unfair Competition Law ("UCL"), defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice, and provides that a Court may enjoin acts of unfair competition, and order restitution to affected members of the class.

5

The third amended complaint attempts to impute UCL liability to Smith Chevrolet as successor in interest to Sanders Oldsmobile.

### *Pending Demurrer*

Smith Chevrolet has demurred to the third amended complaint on grounds that the substituted *Dominguez* plaintiffs have failed to allege a viable UCL claim in the absence of injury or property loss, wrongdoing attributable to Smith Chevrolet, or economic injury from Sanders Oldsmobile's UCL violations. A July 10, 2009 hearing is set for the demurrer before the Stanislaus County Superior Court.[4]

### **Sentry's Policies**

Sentry issued Sanders Oldsmobile policies (the "Sentry policies") effective during 1999-2001 with various coverages discussed more specifically below. Since June 2002, Sentry has provided Sanders with a defense of the *Dominguez* action, pursuant to a reservation of rights, including declaratory relief that Sentry is not obligated to defend or indemnify Sanders in the *Dominguez* action.

### *Errors And Omissions*

The Sentry policies include an Errors and Omissions Coverage form which provides in pertinent part:

**COVERAGE A. TRUTH-IN- LEASING AND TRUTH-IN-LENDING ERRORS AND OMISSIONS**

**1.  Insuring Agreement**

    a.    We will pay sums an "insured" legally must pay as damages arising from negligent errors or omissions which result in civil violation of:

        (1)    Any federal, state or local Truth-in-Leasing statute; or

        (2)    Any federal, state or local Truth-in-Lending statute.

    b.    We have the right and duty to investigate, defend and settle any claim or "suit" for these damages. However, we have no duty to investigate, defend or settle a claim or "suit" not covered by this insurance. Our payment of the Limit of Insurance end our duty to investigate, defend or settle.

---

[4] Sanders and Smith note that post-remand activities in the trial court have been limited to the amended complaints and Smith Chevrolet's demurrer and peremptory challenge of the trial judge. Sentry notes that Sanders has filed an answer to the "operative pleading" in the *Dominguez* action.

*Garage Coverage*

The Sentry policies include a garage coverage form which provides in relevant part:

**SECTION II LIABILITY COVERAGE**

**A.    COVERAGE**

**'GARAGE OPERATIONS' – OTHER THAN COVERED 'AUTOS'**

We will pay all sums an "insured" legally must pay as damages . . . because of "bodily injury" or "property damage" to which this insurance applies caused by an "accident" and resulting from "garage operations" other than the ownership, maintenance or use of covered "autos."

. . .

**SECTION VI – DEFINITIONS**

**C.**    "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

. . .

**M.**    "Property damage" means damage to or loss of use of tangible property.

*Commercial Umbrella/Excess Liability Coverage*

The Sentry policies have a Commercial Umbrella/Excess Liability Coverage Form which provides in pertinent part:

**B.    COVERAGE B – UMBRELLA LIABILITY**

If no "underlying insurance" applies, we will pay "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" which occurs during the period of coverage, of "personal injury" or "advertising injury" caused by an "offense" committed during the period of coverage, subject to all provisions and limitations of this insurance. . . .

. . .

**SECTION V – DEFINITIONS**

"Advertising injury" means injury arising out of one or more of the following offenses committed in the course of advertising an insured's goods, products or services:

a.    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b.    Oral or written publication of material that violates a person's right of privacy;

c.    Misappropriation of advertising ideas or style of doing business;

7

d. Infringement of copyright, title or slogan.

. . .

"Bodily injury" means bodily injury, sickness, disease, disability, shock, fright, mental anguish, mental injury or death sustained by a person and caused by an "occurrence."

. . .

"Personal injury" means injury other than "bodily injury" arising out of one or more of the following "offenses" committed in the course of an insured's business:

a. False arrest, detention, or imprisonment;

b. Malicious prosecution;

c. Wrongful entry into, or eviction of a person from a room, dwelling, or premises that the person occupies;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, services, or products;

e. Oral or written publication of material that violates a person's right of privacy;

f. Discrimination or harassment, if coverage is permitted by law, against a person that is not committed by or at the direction of you or an insured partner, member of a joint venture, executive officer, director, stockholder, or an injured spouse if you are an insured individual or partner;

Damages for "personal injury" may include, but are not limited to, embarrassment, fright, humiliation, mental anguish, mental injury, or loss of reputation arising from an "offense."

"Property damage" means:

a. Physical Injury to tangible property, including all resulting loss of use of that property, caused by an "occurrence," and

b. Loss of use of tangible property not physically injured, if such loss of use is caused by an "occurrence," but such loss of use shall be deemed to occur only at the time of "occurrence" that caused it.

. . .

"Ultimate net loss" means the amount actually paid or payable in settlement or satisfaction of the insured's legal liability for damages covered by this insurance, either by final adjudication or by compromise without written consent. "Ultimate net loss" does not include expenses incurred by anyone for investigation or defense of a claim or "suit."

**Sentry's Coverage Claims And Prior Stay**

In this coverage action, Sentry proceeds on its first amended complaint ("FAC") and seeks summary adjudication on the FAC's:

1. Fifth declaratory relief cause of action that Sentry owes no current duty under the Sentry policies to defend Sanders against the *Dominguez* action; and

2. Seventh declaratory relief cause of action that Sentry owes no current duty under the Sentry policies to indemnify Sanders or the substituted *Dominguez* plaintiffs for damages which may be awarded in the *Dominguez* action.

Sentry pursues summary adjudication after a limited lift of this action's stay. With her August 7, 2007 order, U.S. Magistrate Judge Snyder had stayed this action in that:

1. "The resolution of the issues before this Court turns on factual questions that are intertwined with issues in the underlying actions";

2. The "real possibility of inconsistent factual findings weighs in [favor] of granting a stay";

3. The "outcome of the underlying *Dominguez* action will be dispositive of many of the issues before this Court, i.e., the scope of [Sentry's] duty to defend and indemnify";

4. Sanders and Smith "should not be forced to litigate on two fronts" – the underlying *Dominguez* action and this coverage action; and

5. Sentry "should not be allowed to force its insured to litigate against [its] insurer while simultaneously purporting to represent their interests in *Dominguez*. The potential for a conflict of interest is great and further weighs in favor of a stay."

On December 17, 2008, Judge Snyder lifted the stay to permit discovery and a summary adjudication motion on Sentry's duty to defend and indemnify the *Dominguez* action.

## DISCUSSION

### Summary Adjudication Standards

F.R.Civ.P. 56(a) permits a "party claiming relief" to seek "summary judgment on all or part of the claim." Summary judgment/adjudication is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment/adjudication as a matter of law. F.R.Civ.P. 56(c); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986);

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment/adjudication is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

On summary judgment/adjudication, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56(c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). The evidence of the party opposing summary judgment/adjudication is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

To carry its burden of production on summary judgment/adjudication, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *See Adickes*, 398 U.S. at 160, 90 S.Ct. 1598.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

"But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-289, 88 S.Ct. 1575, 1592 (1968)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

Under F.R.Civ.P. 56(d)(1), a summary judgment/adjudication motion, interlocutory in character, may be rendered on the issue of liability alone. "In cases that involve . . . multiple causes of action, summary judgment may be proper as to some causes of action but not as to others, or as to some issues but not as to others, or as to some parties, but not as to others." *Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir. 1981); *see also Robi v. Five Platters, Inc.*, 918 F.2d 1439 (9th Cir. 1990); *Cheng v. Commissioner Internal Revenue Service*, 878 F.2d 306, 309 (9th Cir. 1989). A court "may grant summary adjudication as to specific issues if it will narrow the issues for trial." *First Nat'l Ins. Co. v. F.D.I.C.*, 977 F.Supp. 1051, 1055 (S.D. Cal. 1977).

In short, Sentry seeks declaratory relief that it owes no current duty to defend Sanders in the *Dominguez* action and owes no current duty to indemnify Sanders, Smith or the substituted *Dominguez* plaintiffs as potential judgment creditors for a judgment in the *Dominguez* action in that Sanders is not liable for damages covered by the Sentry policies. As discussed below, Sentry has eliminated potential coverage based on the current status of the *Dominguez* action.

**Policy Interpretation And Duties To Defend And Indemnify**

Interpretation of an insurance policy is a question of law when determining whether a particular policy provides coverage and a duty to defend. *Waller v. Truck Ins. Exchange*, 11 Cal.4th 1, 18, 44 Cal.Rptr.2d 370 (1995); *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 818, 274 Cal.Rptr. 820 (1990); *see Marquez Knolls Property Owners Assoc., Inc. v. Executive Risk Indemnity, Inc.*, 153 Cal.App.4th 228, 233-234, 62 Cal.Rptr.3d 510, 515-516 (2007) ("The interpretation of an exclusionary clause is an issue of law subject to this court's independent determination."). The "burden is on the insured to prove that he or she comes within the scope of the basic coverage." *National Auto. & Casualty Ins. Co. v. Stewart*, 223 Cal.App.3d 452, 463, 272 Cal.Rptr. 625 (1990) (citing *Royal Globe Ins. Co. v. Whitaker,* 181 Cal.App.3d 532, 537, 226 Cal.Rptr. 435 (1986)). "[C]ourts will not indulge in a forced construction of the policy's insuring clause to bring a claim within the policy's coverage." *Collin v. American Empire Ins. Co.*, 21 Cal.App.4th 787, 803, 26 Cal.Rptr.2d 391 (1994).

"An insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected." *National Ins. Underwriters v. Carter*, 17 Cal.3d 380, 386, 131 Cal.Rptr. 42 (1976) (quoting *Continental Cas. Co. v. Phoenix Constr. Co.*, 46 Cal.2d 423, 432, 296 P.2d 801 (1956)). However, "the burden of bringing itself within any exculpatory clause contained in a policy is on the insurer." *Executive Aviation, Inc. v. National Ins. Underwriters*, 16 Cal.App.3d 799, 806, 94 Cal.Rptr. 347 (1971); *Clemmer v. Hartford Ins. Co.*, 22 Cal.3d 865, 880, 151 Cal.Rptr. 285 (1978).

An insurer has a duty to defend an insured if the insurer becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under an insuring agreement. *Waller*, 11 Cal.4th at 19, 44 Cal.Rptr.2d 370; *GGIS Ins. Servs., Inc. v. Superior Court*, 168 Cal.App.4th 1493, 1505, 86 Cal.Rptr.3d 515 (2008) ("A liability insurer has a duty to defend its insured if facts alleged in the complaint, or other facts known to the insurer, potentially could give rise to coverage under the policy.") California courts "have been consistently solicitous of insureds' expectations" to invoke "the right to call on the insurer's superior resources for the defense of third party claims." *Montrose Chemical Corp. v. Superior Court,* 6 Cal.4th 287, 296-297, 24 Cal.Rptr.2d 467 (1993).

Although an insurer's duty to defend is broader than its duty to indemnify, "where there is no

possibility of coverage, there is no duty to defend." *Fire Ins. Exchange v. Abbott*, 204 Cal.App.3d 1012, 1029, 251 Cal.Rptr. 620 (1988). Determination "whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." *Waller*, 11 Cal.4th at 19, 44 Cal.Rptr.2d 370; *see Montrose Chem.*, 6 Cal.4th at 300, 24 Cal.Rptr.2d 467 ("The duty to defend is determined by reference to the policy, the complaint, and *all* facts known to the insurer from any source.")

"An insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date." *Gunderson v. Fire Ins. Exchange*, 37 Cal.App.4th 1106, 1114, 44 Cal.Rptr.2d 272 (1995). Nonetheless, "the existence of a duty to defend turns not upon the ultimate adjudication of coverage under its policy of insurance, but upon those facts known by the insurer at the inception of a third party lawsuit. . . . Hence, the duty 'may exist even where coverage is in doubt and ultimately does not develop.' " *Saylin v. California Ins. Guarantee Assn.,* 179 Cal.App.3d 256, 263, 224 Cal.Rptr. 493 (1986) (citation omitted). "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Montrose Chem.*, 6 Cal.4th 299-300, 24 Cal.Rptr.2d 467.

Although broad, the duty to defend is not unlimited and "is measured by the nature and kinds of risks covered by the policy." *Waller*, 11 Cal.4th at 19, 44 Cal.Rptr.2d 370. "To prevail, the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*." *Montrose Chemical*, 6 Cal.4th at 300, 24 Cal.Rptr. 467 (italics in original). An insurer "must defend a suit which potentially seeks damages within the coverage of the policy." *Gray v. Zurich Insurance Co.,* 65 Cal.2d 263, 275, 54 Cal.Rptr. 104 (1966). "To defend immediately, [an] insurer must defend entirely. It cannot parse the claims, dividing those that are at least potentially covered from those that are not." *Buss v. Superior Court*, 16 Cal.4th 35, 49, 65 Cal.Rptr.2d 366 (1997).

In *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal.4th 643, 655, 115 P.3d 460 (2005), the California Supreme Court succinctly explained:

> If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage. On the other hand, if, as a matter of law, neither the complaint nor the known extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise in the first instance.

The duty to defend is not necessarily indefinite:

> An insurer's duty to defend continues only so long as the possibility of duty to indemnify remains alive. Once that possibility is extinguished by court order, the duty to defend ceases. Whenever the insurer can demonstrate no possibility of a duty to indemnify, the insurer is entitled to termination of its duty to defend under the "substantive law" of insurance . . .

*Liberty Mutual Ins. Co. v. Superior Court*, 58 Cal.App.4th 617, 623, 68 Cal.Rptr.2d 219 (1997); *see Montrose Chemical*, 6 Cal.4th at 295, 24 Cal.Rptr. 467 ("defense duty is a continuing one, arising on tender of defense and lasting until the underlying lawsuit is concluded . . . or until it has been shown that there is no potential for coverage.")

In contrast to the duty to defend, the duty to indemnify "arises when the insured's underlying liability is established. . . . Although an insurer may have a duty to defend, it ultimately may have no obligation to indemnify, either because no damages were awarded in the underlying action against the insured, or because the actual judgment was for damages not covered under the policy." *Montrose Chemical Corp. of Cal. v. Admiral Ins. Co.*, 10 Cal.4th 645, 659, n. 9, 42 Cal.Rptr.2d 324 (1995). "Finally, while an insurer has a duty to defend suits which potentially seek covered damages, it has a duty to indemnify only where a judgment has been entered on a theory which is actually (not potentially) covered by the policy." *Collin*, 21 Cal.App.4th at 803, 26 Cal.Rptr.2d 391.

With these standards in mind, this Court turns to Sentry's defense and indemnity obligations, if any, under the facts at hand.

### Remaining UCL Claim – Duty To Defend

Sentry contends that the limited issue remaining after remand in the *Dominguez* action is a UCL claim which can result only in an uncovered award of restitution. Sentry argues that the remaining UCL claim does not invoke liability coverage under the Sentry policies in that such claim is not for damages covered by a liability policy and coverage is barred by public policy to prevent retention of proceeds by unlawful conduct.

14

Sanders and Smith respond that summary adjudication "is premature" in that the *Dominguez* action and the scope of its issues remain unsettled with Smith Chevrolet's pending demurrer and potential amendment of the substituted *Dominguez* plaintiffs' complaint to add claims. Sanders and Smith argue that "factual determinations that are at issue in the *Dominguez* action will substantively affect the issues to be determined in this case."

### *Uncovered Damages*

California provides a private cause of action for "unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue of misleading advertising." *Cort v. St. Paul Fire & Marine Ins. Co., Inc.*, 311 F.3d 979, 987 (9th Cir. 2002) (citing Cal. Bus. & Prof. Code, § 17200 ("section 17200")). This "sweeping language" includes "anything that can properly be called a business practice and that at the same time is forbidden by law." *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1266, 10 Cal.Rptr.2d 538 (1992). Section 17200 "entitles an individual litigant only to injunctive and restitutionary relief; it does not provide for damages." *Cort*, 311 F.3d at 987 (because property insurance policy covered "payment of damages," a section 17200 claim "did not give rise to a duty to defend"); *see also Jaffe v. Crawford Ins. Co.*, 168 Cal.App.3d 930, 934, 214 Cal.Rptr. 567 (1985) ("outcome of [insured's] criminal case could not result in damages payable under the [malpractice] policy since neither imprisonment nor a fine constitutes 'damages' for insurance purposes").

The "only nonpunitive monetary relief" available under the UCL "is disgorgement of money that has been wrongfully obtained." *Bank of the West*, 2 Cal.4th at 1266, 10 Cal.Rptr.2d 538. An insurer "may not insure against the risk of being ordered to return money or property that has been wrongfully acquired. Such orders do not award 'damages' as that term is used in insurance policies." *Bank of the West*, 2 Cal.4th at 1266, 10 Cal.Rptr.2d 538.

"[I]nsurable 'damages' include monetary awards that represent compensation for harm to third parties." *Bank of the West*, 2 Cal.4th at 1270, 10 Cal.Rptr.2d 538. Coverage is barred in "situations in which the defendant is required to restore to the plaintiff that which was wrongfully acquired." *AIU*, 51 Cal.3d at 836, 274 Cal.Rptr. 820.

Sentry argues that the above authorities establish that Sanders has no potential liability to pay "damages" covered by the Select policies on the remaining *Dominguez* action UCL claim in that the

limited remedy for such claim is "restitution of ill-gotten gains." In the absence of covered liability, Sentry concludes it lacks a duty to defend.

### *Public Policy*

Sentry further contends that it lacks a duty to defend in that restitution "cannot be covered by liability insurance as a matter of public policy." Sentry contends that if insurance coverage was available for Sanders' liable conduct, Sanders "would be able to retain the proceeds of its unlawful conduct."

"[A]s a matter of public policy, an insured's payment of certain types of restitution cannot be covered by insurance." *AIU*, 51 Cal.3d at 836, 274 Cal.Rptr. 820; *see Jaffe*, 168 Cal.App.3d 930, 214 Cal.Rptr. 567 (liability insurance would not cover insured's restitution of Medi-Cal overpayment); *State Farm Fire & Cas. Co. v. Superior Court*, 191 Cal.App.3d 74, 236 Cal.Rptr. 216 (1987) (insured's payment of statutory restitution to crime victims not covered by insurance).

As to coverage for monetary awards under the UCL, the California Supreme Court has explained:

> If insurance coverage were available for monetary awards under the [UCL], a person found to have violated the act would simply shift the loss to his insurer and, in effect, retain the proceeds of his unlawful conduct. Such a result would be inconsistent with the act's deterrent purpose. As we have previously explained, " '[t]o permit the [retention of even] a portion of the illicit profits, would impair the full impact of the deterrent force that is essential if adequate enforcement [of the law] is to be achieved. One requirement of such enforcement is a basic policy that those who have engaged in proscribed conduct surrender all profits flowing therefrom.' " (*Fletcher v. Security Pacific National Bank, supra*, 23 Cal.3d at p. 451, quoting *Securities & Exchange Com'n v. Golconda Mining Co.* (S.D.N.Y. 1971) 327 F.Supp. 257, 259-260 [brackets in *Fletcher*].)

*Bank of the West*, 2 Cal.4th at 1267, 10 Cal.Rptr.2d 538.

In response to Select's arguments, Sanders and Smith assert that since Proposition 64, plaintiffs "must plead and prove economic injury and loss of money or property to have standing." Sanders and Smith note that if the substituted *Dominguez* plaintiffs are able to establish lost money or property to satisfy a UCL claim, "they may well have other claims, aside from the UCL claim, so *Bank of the West* does not apply." Sanders and Smith surmise that the substituted *Dominguez* plaintiffs "are likely to respond to the demurrer by seeking to prove damages under another theory other than their UCL claim, attempt to cure their standing issue by amending their complaint to allege that they lost property other than money (e.g. the loss of use of trade-in vehicles) or both." Sanders and Smith note that the substituted *Dominguez* plaintiffs' ultimate claims "remain to be seen, especially in light of Smith

Chevrolet's Demurrer." Sanders and Smith conclude that "there is, at least, a clear potential for covered claims in this case, and at this point, any doubt as to coverage needs to be resolved in favor of Sanders Oldsmobile, triggering Sentry Select's duty to defend." Sanders and Smith urge that the "appropriate time" to determine coverage and duty to defend "is after the underlying case is resolved."

In its reply papers, Sentry characterizes as "irrelevant" Smith Chevrolet's demurrer in the *Dominguez* action in that Sentry's duty to defend runs to its insured Sanders Oldsmobile, which "answered the operative complaint almost one year ago." Sentry accuses Sanders and Smith of "improper speculation to manufacture coverage."

The scope of the what remains in the *Dominguez* action is a UCL claim uncovered by the Sentry policies. The trial court and Court of Appeal in the *Dominguez* action disposed of the other fraud and consumer claims. Sanders and Smith speculate that the substituted *Dominguez* plaintiffs may pursue non-UCL claims but fail (and appear unable) meaningfully to identify such claims especially given prior disposition of the fraud and consumer claims. Sanders and Smith fail to demonstrate that the universe of the remaining *Dominguez* action exceeds an uncovered UCL claim.

In turn, Sanders and Smith fail to meet their burden that the remaining *Dominguez* action falls within the scope of the Sentry policies' basic coverage. *See National Auto*, 223 Cal.App.3d at 537, 226 Cal.Rptr. 435. Sanders and Smith's coverage hopes rest on potential, currently unpled claims. Sanders and Smith identify no facts extrinsic to the *Dominguez* action pleadings to reveal a potential covered claim. Sanders and Smith merely speculate without substance that the pleadings will evolve into a covered claim. "An insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date. This approach misconstrues the principle of 'potential liability' under an insurance policy." *Gunderson*, 37 Cal.App.4th at 1114, 44 Cal.Rptr.2d 272. An insurer's duty to defend whenever there is the "possibility" or "potential" for coverage "is restricted to the nature of the lawsuit actually asserted by the third party . . . an insurer owes no duty to defend based upon mere 'speculation' as to claims that a third party might have brought." *Storek v. Fidelity & Guar. Ins. Underwriters, Inc.*, 504 F.Supp.2d 803, 811 (N.D. Cal. 2007). Based on the state of UCL law and current status of the *Dominguez* action,

/ / /

Sentry has eliminated potential for coverage.[5]

### Remaining UCL Claim – Duty To Indemnify

As it argued regarding its duty to defend, Sentry contends that it lacks a duty to indemnify because any *Dominguez* action relief will not be "damages" covered by the Sentry policies and coverage for such relief is precluded by public policy.

A determination that there is no duty to defend automatically means that there is no duty to indemnify. *Underwriters at Lloyd's of London v. Superior Court*, 24 Cal.4th 945, 961, 103 Cal.Rptr.2d 672 (2001). The "duty to indemnify is not broad enough to extend beyond 'damages,' i.e., money ordered by a court, but rather is limited thereto." *Underwriters*, 24 Cal.4th at 961, 103 Cal.Rptr.2d 672.

In the absence of a duty to defend the *Dominguez* action, Sentry lacks a duty to indemnify as to the *Dominguez* action.

### All Coverages

Sentry further contends none of the Sentry policies' coverages (errors and omissions, garage, and commercial umbrella/excess liability) applies. Sentry notes that all the coverages are limited to claims for damages which do not remain in the *Dominguez* action. Sentry continues that alleged misrepresentation of necessity to purchase an extended service agreement does not constitute "bodily injury," "property damage," "advertising injury," or "personal injury" as defined by the coverages.

Smith and Sanders do not address the Sentry policies' specific coverages and rest their coverage arguments on potential claims which this Court has addressed above. Sentry correctly notes the absence of coverage under the current status of the *Dominguez* action.

### Stay Reinstatement

Sanders and Smith seek to reinstate stay of Sentry's claims at issue here. Sanders and Smith rely on Judge Snyder's grounds to stay this action in August 2007. Given this Court's above evaluation and the current status of the remaining *Dominguez* action, no grounds are present to reinstate a stay of Sentry's claims at issue here. Granting summary adjudication for Sentry eliminates purported conflict

---

[5] Of course, if the substituted *Dominguez* plaintiffs file an amended complaint to allege covered or potentially covered claims, Sanders and Smith are able to tender the defense to Sentry which is bound by its well-defined duties. In its reply papers, Sentry acknowledges that "Sanders can always retender the matter to Sentry."

18

between the insurer and insured. Reinstatement is unwarranted in the absence of potentially intertwined factual issues in this coverage action and the *Dominguez* action.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. GRANTS Sentry summary adjudication that Sentry owes no current duty under the Sentry policies to: (a) defend Sanders against the *Dominguez* action; or (b) indemnify Sanders, Smith or the substituted *Dominguez* plaintiffs for damages which may be awarded in the *Dominguez* action; and

2. DENIES reinstatement of the stay of Sentry's claims subject to this summary adjudication decision.

IT IS SO ORDERED.

**Dated:  May 28, 2009**                     /s/ Lawrence J. O'Neill
                                              UNITED STATES DISTRICT JUDGE